IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CLYDE IGARASHI, MICHELLE IGARASHI, and others similarly situated named herein as DOES 10 through 1000, inclusive,<br><br>            Plaintiffs,<br><br>    vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, et al.,<br><br>            Defendants. | CIVIL NO. 19-00083 JAO-KJM<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs Clyde and Michelle Igarashi ("Plaintiffs") filed an Amended

Complaint ("Am. Compl.") against various Defendants, all of whom have moved

to dismiss the Amended Complaint with prejudice.[1]  For the reasons stated below,

the motions are GRANTED.

---

[1]  Defendants Deutsche Bank National Trust Company as Trustee for Harborview Mortgage Loan Trust 2006-14; Mortgage Electronic Registration Systems, Inc.; Merscorp; Homeward Residential Inc.; Ocwen Loan Servicing, LLC; Ocwen Financial Corporation; and Ocwen Mortgage Servicing, Inc. joined in one motion to dismiss.  ECF No. 60.  Defendant CIT Bank, N.A. ("CIT") filed a separate motion to dismiss.  ECF No. 61.  Defendant RBS Financial Products, Inc. ("RBS") also moved separately to dismiss the Amended Complaint.  ECF No. 67.

# I.    BACKGROUND

## A.    Facts

In 2006, Plaintiffs obtained a loan to purchase their home in Mililani, entering into an Adjustable Rate Note with IndyMac Bank.  Am. Compl. ¶ 13.  The loan was secured by a mortgage on the real property, and the original mortgagee was Defendant Mortgage Electronic Registration Systems, Inc. ("MERS").  Am. Compl. ¶¶ 23-24, ECF No. 56-6 at 26.[2]  The note provided that the lender, IndyMac Bank, could transfer the note.  ECF No. 56-6 at 21.  In 2012, the mortgage was assigned to Defendant Deutsche Bank National Trust Company as Trustee for Harborview Mortgage Loan Trust 2006-14 ("Deutsche Bank").  ECF No. 56-6 at 48-49 (showing date recorded as September 27, 2012).  The assignment was signed by Wendy Traxler, on behalf of MERS (as nominee for IndyMac Bank).  Id.; Am. Compl. ¶ 24.  Plaintiffs allege that, when that assignment occurred, IndyMac Bank was bankrupt.  Am. Compl. ¶¶ 23, 42.

At some point, Plaintiffs fell behind on their payments, but in April 2015, paid Defendant Ocwen (which had begun servicing the loan) $43,980 to bring their payments up to date.  Id. ¶¶ 15-17.  In June 2015, Defendant Deutsche Bank brought a foreclosure action against Plaintiffs in state court, but dismissed the

---

[2]  See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

foreclosure action a few months later. *Id.* ¶¶ 19-22. Then in April 2017, Deutsche Bank filed another foreclosure action against Plaintiffs, which is currently pending in state court. *Id.* ¶ 23.

As with Plaintiffs' initial Complaint, ECF No. 1, the Amended Complaint appears to allege that Defendants engaged in a fraudulent transfer of the mortgage, and that Deutsche Bank is not legally entitled to foreclose on Plaintiffs' home. *See, e.g.*, Am. Compl. ¶¶ 34, 38. The Amended Complaint asserts the Defendants either created false documents or tampered with documents, *id.* ¶¶ 24, 34, failed to notify Plaintiffs that the loan was transferred or would be converted into a mortgage backed security, *id.*, ¶¶ 25, 31, and failed to credit payments Plaintiffs made, *id.* ¶ 19. Plaintiffs also allege that Defendants failed to provide them with the Pooling and Servicing Agreement ("PSA") governing the pool of securitized mortgage loans that included Plaintiffs' loan, and further that Defendants failed to comply with the terms of the PSA. *Id.* ¶¶ 15, 23, 32-33

The Amended Complaint does not delineate separate causes of action. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."). It does, however, reference the following federal provisions: (1) the Fair Debt Collection Practices Act ("FDCPA"); (2) the Truth in Lending Act ("TILA"); (3) the Federal Trade Commission Act ( "FTCA"); (4) the civil

provisions of the Racketeer Influenced & Corrupt Organizations Act ("RICO"); and (5) the Real Estate Settlement Procedures Act ("RESPA"). The Amended Complaint also references a handful of state statutes and causes of action under common law. *See, e.g.*, Am. Compl. at 2.

## B. Procedural History

Plaintiffs brought this action on February 14, 2019. ECF No. 1. Defendants moved to dismiss the Complaint. ECF Nos. 18, 29. The Court granted the motions and dismissed the Complaint. ECF No. 50. At the outset, the Court concluded the Complaint failed to meet Rule 8's pleading requirements because neither Defendants nor the Court could decipher which claims Plaintiffs were bringing against which Defendants and on what bases. *See id.* The Court therefore dismissed the Complaint with leave to amend and provided Plaintiffs with specific instructions about how to cure these deficiencies. *See id.* The Court then addressed some of Plaintiffs' specific claims. The Court dismissed with prejudice Plaintiffs' claims under RESPA, the Securities Act of 1933, and under the Longshore and Harbor Workers' Compensation Act, but granted Plaintiffs leave to amend their FDCPA and TILA claims. *See id.*

Plaintiffs filed the Amended Complaint on September 3, 2019. Defendants moved to dismiss the Amended Complaint, arguing that the Amended Complaint still fails to meet the minimum pleading standards and that the Amended

Complaint fails to state a claim upon which relief can be granted.  ECF Nos. 60, 61, 67.  Some Defendants also argue that, if the Court dismisses Plaintiffs' federal claims, it lacks jurisdiction to consider Plaintiffs' state law claims.  ECF No. 60-1 at 17; ECF No. 67-1 at 11-12.  Plaintiffs opposed Defendants' motions.  ECF Nos. 71, 72, 73.  The Court requested additional briefing from Defendants on the amount of controversy in this case, ECF No. 80, and Defendants filed their supplemental briefs responding to the request, ECF Nos. 81, 82.  The Court held a hearing on Defendants' motions on November 27, 2019.

## II.    LEGAL ANALYSIS

### A.    Rule 12(b)(1)

Rule 12(b)(1) motions challenge a court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Federal courts are presumed to lack subject matter jurisdiction, and the plaintiff bears the burden of establishing that jurisdiction is proper.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Dismissal under Rule 12(b)(1) is warranted when the plaintiff fails to meet this burden.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  A motion to dismiss under Rule 12(b)(1) can amount to a facial or factual challenge.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial challenge, the movant asserts that the allegations of the complaint "are insufficient on their face to invoke federal jurisdiction."  *Leite v.*

*Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air*, 373 F.3d at 1039). As in a motion to dismiss under Rule 12(b)(6), the court accepts the plaintiff's allegations as true, draws all reasonable inferences in the plaintiff's favor, and determines whether the allegations sufficiently invoke the court's jurisdiction. *See id.*

**B.  Rule 12(b)(6)**

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original) (citation omitted). A complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and

6

"factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III.  DISCUSSION

### A.  Compliance with Pleading Requirements

Defendants again assert that the Amended Complaint fails to comply with both the requirements of Rule 8, and the Court's prior order directing Plaintiffs to: (1) identify only those claims they wish to assert; (2) adequately identify which claims are alleged against which Defendants; and (3) adequately specify the factual allegations supporting each claim.  ECF No. 50 at 8-9.  The Court agrees.

The Amended Complaint fails to delineate Plaintiffs' separate causes of action and, instead, contains references to numerous statutes and regulations without providing factual support or otherwise explaining how Defendants' conduct constitutes a violation of those provisions.  In most instances, Plaintiffs also fail to identify which Defendants have violated the statute or regulation referenced.  With regard to the state law claims, Plaintiffs' pleading is more deficient—referencing a list of claims at the outset, most of which are never mentioned again.  As a result, Defendants are deprived of fair notice of what claims Plaintiffs bring and the factual bases for these claims, and the Court must

piece together whether Plaintiffs have stated claims that they may not even wish to press.[3]  *See McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996); *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008).  Plaintiffs also failed to comply with the Court's instruction that they not include irrelevant information in the amended complaint.  ECF No. 50 at 10-11.  For example, the Court previously dismissed with prejudice Plaintiffs' RESPA claim, which was premised on not receiving notification of a change in their loan servicer.  ECF No. 50 at 13-14.  The Amended Complaint, however, attempts to reassert this claim.  *See* Am. Compl. ¶ 31.

Because the Court previously alerted Plaintiffs to these deficiencies, Plaintiffs' Amended Complaint—which is more difficult to decipher than the initial Complaint—can be dismissed again for failing to comply with the requirements of Rule 8 and the Court's prior order.  *See Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).  While dismissal could be premised on

---

[3]  For example, as noted in the Court's July 17, 2019 Order, Plaintiffs' initial Complaint similarly cited numerous federal provisions, including RICO and the Mail and Wire Fraud statutes.  ECF No. 50 at 9.  At the hearing on Defendants' prior motions to dismiss, though, Plaintiffs clarified that they only wished to bring claims under RESPA, TILA, the Securities Act, and the FDCPA.  *See id.*  Now, in the Amended Complaint, Plaintiffs again reference RICO and the Mail and Wire Fraud statutes.  *See* Am. Compl. at 2.  The Court is thus left to guess whether Plaintiffs are again including irrelevant information.  Not until the November 27, 2019 hearing did Plaintiffs confirm that they now do wish to proceed with a RICO claim.

this basis alone, the Court nonetheless addresses those claims that Plaintiffs appear to assert. *See Capp v. County of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) ("We have emphasized that pro se pleadings, such as the [amended complaint] in this case, are to be liberally construed on a motion to dismiss." (citation omitted)).

## B. FDCPA

Plaintiffs' Amended Complaint again references the FDCPA. The Court previously dismissed Plaintiffs' FDCPA claim because it was insufficiently pled. ECF No. 50 at 16. Defendants again move to dismiss the FDCPA claim, arguing Plaintiffs have not alleged facts to support it, including by failing to allege the Defendants are "debt collectors" within the meaning of the FDCPA. *See* ECF No. 60-1 at 14-16; ECF No. 61-1 at 16-18. Defendants also argue that, even if Plaintiffs have stated a claim under the FDCPA, it is barred by the statute of limitations. *Id.* Plaintiffs offer no response as to why their FDCPA claim can proceed. *See* ECF Nos. 71, 72, 73. The Court therefore agrees that Plaintiffs' FDCPA claim should be dismissed with prejudice.

First, Plaintiffs fail to plausibly allege that each of the Defendants is a "debt collector" within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a(6); *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208-10 (9th Cir. 2013); *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1073, 1075 n.3 (9th Cir. 2011); *Dicion v. Mann Mortg., LLC*, 718 F. App'x 476, 479 (9th Cir. 2017). Next, "[w]hile the FDCPA

regulates security interest enforcement activity, it does so *only* through Section

1692f(6).[4]  As for the remaining FDCPA provisions, 'debt collection' refers only

to the collection of a money debt."  *Dowers v. Nationstar Mortg., LLC*, 852 F.3d

964, 970 (9th Cir. 2017).  Thus, to the extent Plaintiffs attempt to bring a claim

based on violations of §§ 1692e, 1692j, or 1692l, those claims must be dismissed

with prejudice.  *See id.* at 970-71; *see also* Am. Compl. ¶¶ 19, 24, 31, 34 (alleging

violations of these sections).

While Plaintiffs would be able to proceed under § 1692f(6), which regulates

nonjudicial foreclosure activity, they nowhere mention that subsection.  Instead,

their FDCPA claim appears to be based on the notion that Deutsche Bank's judicial

foreclosure action is improper because there is no contract between Plaintiffs and

Deutsche Bank, and any documents in the foreclosure proceedings tending to show

Deutsche Bank has a right to foreclose are false.  *See* Am. Compl. ¶ 34.  Plaintiffs

thus fail to state a claim under the FDCPA to the extent they complain about

---

[4]  Section 1692f(6) prohibits:

> Taking or threatening to take any *nonjudicial action* to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6) (emphasis added).

Defendants' conduct in a judicial foreclosure proceeding. *See id.* ¶¶ 13, 34 (citing documents filed in judicial proceedings).

Even if Plaintiffs' allegations consist of conduct outside that judicial process, Plaintiffs have still failed to state a claim under the FDCPA. Defendants argue the statute of limitations for a claim under the FDCPA is one year from when Plaintiffs knew or should have known of the violation, which Plaintiffs do not dispute. *See* 15 U.S.C. § 1692k(d). Plaintiffs also fail to explain why their FDCPA claim is not untimely. In light of this concession, and because Plaintiffs' FDCPA claim appears to be based on conduct that occurred more than one year before Plaintiffs filed this action in February 2019, the Court concludes it is time-barred. *See* Am. Compl. ¶ 34 (alleging § 1692f violation based on there never being a contract between Plaintiffs and Deutsche Bank or on securitization of the mortgage). For each of these reasons, the Court **DISMISSES** Plaintiffs' FDCPA claim **WITH PREJUDICE**.

## C.    TILA

Plaintiffs again reference TILA. The Court previously dismissed Plaintiffs' TILA claim because Plaintiffs appeared to base it on a failure to provide notice of a transfer of a mortgage, but did not allege which transfer formed the basis for their TILA claim. *See* ECF No. 50 at 15-16 (citing 12 C.F.R. § 1026.39 and 15 U.S.C. § 1641(g)). Plaintiffs' TILA claim now apparently arises from Defendants' failure

to notify them of "any information regarding the 'sale' and/or 'transfer' of the 'note' and 'mortgage' to the Harborview REMIC Trust or their Trustee Deutsche Bank." Am. Compl. ¶ 15; *see also id.* ¶ 13. But as the Court previously explained, under 15 U.S.C. § 1640(e), plaintiffs must file TILA claims within one year "from the date of the occurrence of the violation." ECF No. 50 at 15. Plaintiffs' own allegations indicate that the transfer occurred and was recorded in 2012 and that Plaintiffs were aware of this at least by 2015. Am. Compl. ¶¶ 14, 23; ECF No. 56-4 at 6-7. In light of these allegations, and because Plaintiffs do not argue otherwise, the Court concludes that any claim under TILA is time-barred.[5] This is so even if the Court construes other vague references in Plaintiffs' Amended Complaint as attempts to raise a claim for damages under TILA based on other conduct, e.g., a failure to credit payments and provide periodic statements in relation to the 2015 foreclosure lawsuit. Am. Compl. ¶ 19. Nor do Plaintiffs respond to Defendants' other objections, for example that Plaintiffs have failed to allege that all Defendants are "creditors" under TILA and so subject to its

---

[5] Any TILA claim is time-barred regardless of whether Plaintiffs seek rescission or to recover damages. *See* ECF No. 61-1 at 14 (arguing without objection from Plaintiffs that the right to rescind under TILA may be extended for up to three years from the date Plaintiffs executed loan documents); *see also Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1098 (9th Cir. 2018). The Court also previously dismissed with prejudice Plaintiffs' RESPA claim based on a failure to inform them of a change in the loan servicer. ECF No. 50 at 13-14. Any attempt to raise a TILA claim based on this same conduct necessarily fails for the same reasons. *See, e.g.*, Am. Compl. ¶ 31.

requirements.  *See* ECF No. 67-1 at 10-11.  The Court therefore **DISMISSES**

Plaintiffs' TILA claim **WITH PREJUDICE**.

### D.    Unauthorized Claims in the Amended Complaint

As stated above, Plaintiffs previously represented to this Court that they only

sought to bring claims under: (1) the Securities Act; (2) RESPA; (3) FDCPA; and

(4) TILA.  ECF No. 50 at 4-5.  The Court dismissed the first two claims with

prejudice, but gave Plaintiffs leave to amend the latter two claims in conformity

with the Court's prior order.  *See id.*  Without seeking leave from the Court to do

so, Plaintiffs now add at least *three new* federal claims under the FTCA, RICO,

and again under RESPA.  Moreover, Plaintiffs have added new defendants, e.g.,

RBS.  This is improper because the Court did not permit leave to add new claims

or new defendants.  ECF No. 50 at 17; *see DeLeon v. Wells Fargo Bank, N.A.*, No.

10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("[W]here

leave to amend is given to cure deficiencies in certain specified claims, courts have

agreed that new claims alleged for the first time in the amended pleading should be

dismissed or stricken." (citations omitted)); *Au v. Republic State Mortg. Co.*, Civil

No. 11-00251 JMS/KSC, 2012 WL 3113147, at *15 (D. Haw. July 31, 2012)

(striking under Rule 12(f) allegations that exceeded scope of court's permission to

amend pleading).  The Court could therefore dismiss these new claims and

defendant outright and require Plaintiffs to seek leave to amend under Rule 15.

The Court nonetheless addresses these new claims below.

### i.   FTCA

Plaintiffs reference the FTCA a handful of times in the context of objecting to the securitization process.  *See* Am. Compl. at 2; *id.* ¶¶ 13, 27, 36.  Defendant CIT argues that the claim fails as a matter of law because there is no private right of action under the FTCA.  ECF No. 61-1 at 12-13.  Plaintiffs do not dispute that the claim must be dismissed for this reason.  Indeed, "[i]t is well established that the [FTCA] does not provide a private right of action; only the Federal Trade Commission can bring suit."  *Webb v. Onizuka*, CV. NO. 08-00487 DAE-BMK, 2009 WL 10690804, at *3 n.2 (D. Haw. June 25, 2009), *aff'd*, 384 F. App'x 608 (9th Cir. 2010) (citing 15 U.S.C. § 45(a)(1); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973)).  The Court therefore **DISMISSES** Plaintiffs' claim under the FTCA **WITH PREJUDICE.**

### ii.   RICO

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citations and internal quotation marks omitted).  A pattern requires at least *two* acts of racketeering activity.  *See* 18 U.S.C. § 1961(5).  Mail and wire fraud are predicate

acts for a RICO claim.[6]  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557

(9th Cir. 2010).  "Wire or mail fraud consists of the following elements: (1)

formation of a scheme or artifice to defraud; (2) use of the United States mails or

wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to

deceive or defraud."  *Id.* (citation omitted).

Because Plaintiffs' RICO claims are based on fraud, these allegations must

meet Rule 9(b)'s heightened pleading standard and state with particularity the time,

place, and specific content of the false representations.  *See id.*; *see also Edwards

v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).  Further, "Rule 9(b)

does not allow a complaint to merely lump multiple defendants together[.]"  *Swartz

v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  "In the context of a fraud

suit involving multiple defendants, a plaintiff must, at a minimum, identify the role

of each defendant in the alleged fraudulent scheme."  *Id.* (citations and alterations

omitted).

Defendants move to dismiss Plaintiffs' RICO claim because Plaintiffs failed

to allege each of the elements stated above with the necessary level of

particularity—including by failing to differentiate among the conduct of the

---

[6]  Defendant CIT is correct that Plaintiffs may not bring civil claims for violations
of certain criminal statutes, *see* ECF No. 61-1 at 13; however, the Court construes
Plaintiffs' reference to certain criminal statutes, e.g., mail and wire fraud, as the
predicate racketeering activity underlying Plaintiff's RICO claim.

various Defendants.  ECF No. 60-1 at 8-12; ECF No. 61-1 at 18-20; ECF No. 67-1

at 7-9.  Plaintiffs' opposition offers little in response, except to reiterate that "the

assignment may have been fraudulently made" and that "there is a high likelihood

that the note and assignment of it may have been tampered with."  ECF No. 72 at

6; ECF No. 73 at 6.  Such statements fail to provide the level of specificity

necessary to state a civil RICO claim, especially because they fail to explain how

each Defendant engaged in fraud and did so with the specific intent to defraud.

Plaintiffs point to the varying titles of the individual who signed the transfer[7]

and contend that she was a "robo-signer," apparently suggesting that the transfer

was fraudulent as a result.  Am. Compl. ¶ 24.  These allegations fail to state a

RICO claim because they do not explain how an individual signing documents on

behalf of MERS with a different title listed elsewhere thereby committed fraud or

how such conduct evidences fraudulent intent.  *See* Am. Compl. ¶ 24; ECF No. 56-

4 at 18, 39-40 (listing MERS as mortgagee on mortgage and then as assignor on

transfer to Deutsche Bank); *see Nottage v. Bank of N.Y. Mellon*, Civil No. 12-

00418 JMS/BMK, 2012 WL 5305506, at *6 (D. Haw. Oct. 25, 2012)

("[C]onclusory assertions of 'robo-signing' fail to state a plausible claim[.]"

(citations omitted)).  Plaintiffs' reference to differences in the signature lines on

---

[7]  For example, she signed here as "Assistant Secretary," but with regard to
property in different states involving different borrowers as "Vice President."

copies of certain documents also fails to plausibly state a RICO claim for similar reasons.  *See* Am. Compl. ¶ 26.

Defendants further argue that Plaintiffs may not proceed with a RICO claim premised on the invalidity of the assignment, the securitization of their mortgage, or a violation of the PSA because Plaintiffs are not parties to nor beneficiaries of those agreements.  *See, e.g.*, ECF No. 60-1 at 12; ECF No. 61-1 at 9-10; ECF No. 67-1 at 9.  The Court agrees that Plaintiffs may not bring a RICO claim on these grounds.

In the judicial foreclosure context, a borrower may challenge a *void* assignment—but not an assignment that is merely voidable.  *See U.S. Bank N.A. v. Mattos*, 140 Hawaiʻi 26, 35, 398 P.3d 615, 624 (2017) ("[A] third party unrelated to a pooling and servicing agreement lacks standing to challenge assignments based on alleged violation of the PSA's terms unless the violation would render the assignment void[.]"); *Lynch v. Fed. Nat'l Mortg. Ass'n*, Case No. 16-cv-00213-DKW-RT, 2019 WL 1905157, at *9 (D. Haw. Apr. 29, 2019) ("[I]n appearing to challenge transfers, assignments, or sales to which Plaintiff was not a party, she is asserting a claim for which she does not have standing[.]" (citing *U.S. Bank Nat'l Ass'n v. Salvacion*, 134 Hawaiʻi 170, 175, 338 P.3d 1185, 1190 (App. 2014))); *see also Fed. Nat. Mortg. Ass'n v. Kamakau*, Civil No. 11-00475 JMS/BMK, 2012 WL 622169, at *4 (D. Haw. Feb. 23, 2012) (noting that the securitization of a mortgage

loan does not provide a borrower with a cause of action). To proceed on the theory that Defendants engaged in racketeering based on the assignment, then, Plaintiffs would need to allege facts demonstrating the assignment was void, which they did not do.

Plaintiffs object to whether a certain individual or entity had authority to assign the loan documents, *see* ECF No. 71 at 3-4, but "[a] challenge to the validity of an assignment based on the executor's lack of authority would make the assignment voidable, not void." *Dicion*, 718 F. App'x at 478 (quoting *Paik-Apau v. Deutsche Bank Nat. Tr. Co.*, Civil No. 10-00699 SOM/RLP, 2012 WL 5207495, at *5 (D. Haw. Oct. 19, 2012) ("[Plaintiff's] challenges to the assignments of her loan go to whether those assignments are voidable, as she argues that persons or entities lacked authority to assign the loan documents. She lacks standing to make those challenges.")); *see also Burrington v. Ocwen Loan Servicing, LLC*, 736 F. App'x 649, 651 (9th Cir. 2018) ("Even if [plaintiff] is correct and the assignment of his loan to the 2005-E Trust was untimely, the transaction is merely voidable."); *Lowther v. U.S. Bank*, 702 F. App'x 517, 518 (9th Cir. 2017) ("That his lender . . . may have transferred his note while in bankruptcy proceedings . . . does not void

the transfer, as he claims. Such transfers are merely 'voidable by the trustee,' not void as a matter of law." (citation omitted)).[8]

To the extent Plaintiffs allege the assignment was induced by fraud or misrepresentation, they similarly lack standing to challenge the assignment because contracts induced by fraud or material misrepresentations are voidable. *Paik-Apau*, 2012 WL 5207495, at *5 (citing *Exotics Haw.-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 288, 172 P.3d 1021, 1032 (2007)). Plaintiffs' conclusory claim that Defendants have engaged in unfair or deceptive trade practices is also insufficient to demonstrate standing to challenge the assignment. Conduct that could make an agreement voidable is not necessarily an unfair or deceptive trade practice. *See Bateman v. Countrywide Home Loans*, Civil No. 12-00033 SOM/BMK, 2012 WL 5593228, at *5 (D. Haw. Nov. 14, 2012). "In other words, a voidable agreement—one with a potential defect that a party to the agreement may assert—does not violate section 480–2 such that it automatically becomes void under section 480–12." *Id.* To the extent Plaintiffs attempt to bring a RICO claim on any of these grounds, then, it necessarily fails.

Yet, even if Plaintiffs could state the necessary elements of a RICO claim, Defendant CIT further argues such a claim is time-barred. ECF No. 61-1 at 19-20.

---

[8] In light of this recent authority, the Court finds Plaintiff's reliance on other non-binding, older cases to be unpersuasive. *See, e.g.*, ECF No. 71 at 4 (citing *Nottage*, 2012 WL 5305506).

Civil RICO claims must be brought within four years of when a plaintiff knows or should know of the injury underlying his cause of action. *See Grimmett v. Brown*, 75 F.3d 506, 510-12 (9th Cir. 1996). For RICO, "[t]he plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) (citation omitted).

Defendants argue that Plaintiffs' RICO claim is untimely because it is premised on the origination of the loan over a decade ago and the execution of the assignment over six years ago. ECF No. 61-1 at 19-20. Plaintiffs offer no response in their opposition—and so concede that their RICO claim must also be dismissed with prejudice as untimely. Indeed, Plaintiffs' response seems to acknowledge that their RICO claim is premised on the assignment being fraudulently made "based on the fact that the assignment took place after the lender was no longer in existence." ECF No. 71 at 4; *see also* Am. Compl. ¶ 24. The Amended Complaint acknowledges Plaintiffs were on actual notice that an assignment occurred more than four years before they filed the present suit in February 2019. *See* Am. Compl. ¶ 14 (acknowledging receipt of letter in January 2015 identifying new entity as lender and creditor); ECF No. 56-1. And Plaintiffs had constructive notice before that. *See* ECF No. 56-4 at 18, 39; *see also Amina v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1164 n.22 (D. Haw. 2018) ("A publicly recorded document

provides constructive notice where the document itself constitutes evidence of the fraud." (citation omitted)).  Given these allegations, and Plaintiffs' failure to respond to Defendants' arguments, the Court concludes Plaintiffs have also conceded that any RICO claim would be untimely.

At the hearing on Defendants' motions, Plaintiffs suggested for the first time that their RICO claim was timely because it is based on discrepancies in certain filings in the 2015 and 2017 state foreclosure actions.  Because only Deutsche Bank submitted these filings though, Plaintiffs necessarily conceded that dismissal with prejudice on statute of limitations grounds as to the other Defendants is appropriate.  As to Deutsche Bank, while Plaintiffs indicated at the hearing that the Amended Complaint did not contain allegations to support this theory, it appears Plaintiffs were referencing their allegations regarding (1) an allonge listing the date of the note as October 16, 2006 that Deutsche Bank filed in the 2015 action, but not the 2017 action; and (2) a difference between the signature page on the copy of the note Plaintiffs possess compared to the version Deutsche Bank filed in the 2017 action (which was identical to what it filed in 2015), which together apparently evidence attempts to conceal defects in the assignment.  *See* Am. Compl. ¶ 26; ECF No. 56-4 at 15, 17; ECF No. 56-14 at 1.  The Court reiterates its prior conclusion that Plaintiffs failed to state a RICO claim, including because these facts are insufficient to state the necessary elements of RICO with particularity and

because Plaintiffs lack standing to bring a RICO claim on this basis. First, Plaintiffs' own pleadings confirm that the allonge correctly identifies the date of the note—even if the parties executed it a day later. See ECF No. 56-4 at 12, 17 (note and allonge listing date of note as October 16, 2006). Next, Plaintiffs failed to articulate in their Amended Complaint, in their oppositions, or at the hearing how filing the allonge in 2015, but not in 2017 evidences fraudulent conduct or intent. Nor have Plaintiffs articulated a legal theory under which they could plausibly allege a RICO claim on these grounds as these discrepancies relate to alleged defects in the assignment that, as discussed above, Plaintiffs lack standing to challenge. Because Plaintiffs initially attempted to bring a RICO claim that they withdrew only to allege it once more, failed to comply with the Court's prior order, have now filed two separate prolix pleadings that continue to advance the same facts and theories, and at the hearing failed to articulate any additional facts or theories they could plead if given leave to amend again, the Court concludes that amendment would be futile and only serve to prejudice Defendants who would be required to defend against a third pleading advancing facts and theories the Court has already concluded fail to state a claim. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008) ("Appellants fail to state what additional facts they would plead if given leave to amend[.] Accordingly, amendment would be futile."); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

Cir. 2003) (stating that denying leave to amend is appropriate when granting leave would prejudice opposing party).

For these reasons, Plaintiffs' RICO claim is **DISMISSED WITH PREJUDICE**.

### iii. RESPA

The Court previously dismissed with prejudice Plaintiffs' RESPA claim based on Defendants' failure to disclose a change in the loan servicer because it was untimely. ECF No. 50 at 13-14 (noting three-year statute of limitation from occurrence of violation under 12 U.S.C. § 2614.). To the extent Plaintiffs seek to reallege a RESPA claim on this same basis, it necessarily fails. *See* Am. Compl. ¶ 31. But even if Plaintiffs seek to reallege a RESPA claim based on different facts, it, too, fails. Plaintiffs allege Defendants violated 12 U.S.C. § 2603. *Id.* ¶¶ 25, 32. "It is well-established, however, that there is no private cause of action for violations of 12 U.S.C. [§] 2603[.]" *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 895 (D. Haw. 2011) (citing *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010)) (other citation omitted).

Elsewhere, Plaintiffs reference § 2605 and appear to allege that a lack of disclosure at closing that the mortgage would be "converted into a mortgage backed security" violates RESPA. Am. Compl. ¶ 25. But § 2605 requires certain disclosures when the *servicing* of the loan changes—not when the loan is or could

be transferred to a certain class or category of entities, such as into a securitized trust. Plaintiffs offer no explanation as to why this conduct violates § 2605. *Cf. Kamakau,* 2012 WL 622169, at *4. Further, a RESPA claim on this basis would still be untimely—the alleged violation at closing occurred in 2006, and Plaintiffs' own allegations reveal they were aware a transfer occurred by 2015. *See* Am. Compl. ¶¶ 14-15; ECF Nos. 56-1, 56-2. In light of these deficiencies, and Plaintiffs' failure to the address the merits of Defendants' motions, the Court again **DISMISSES** Plaintiffs' RESPA claim **WITH PREJUDICE**.

### E.    State Law Claims

Having dismissed Plaintiffs' federal claims, Defendants argue that the Court must also dismiss any state law claims because diversity jurisdiction is lacking and the Court should decline to exercise supplemental jurisdiction. While Defendants appear to concede that complete diversity exists, they argue Plaintiffs have failed to allege that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

Plaintiffs bear the burden of demonstrating jurisdiction exists. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). The Amended Complaint contains no mention of an amount in controversy, which means the Court may not exercise diversity jurisdiction over Plaintiffs' state law claims. *See Rilling v. Burlington N. R.R. Co.*, 909 F.2d 399, 400 (9th Cir. 1990). Plaintiffs argue without authority, however, that because the Amended Complaint

and attachments *mention* the amount owed on the loan, that satisfies the jurisdictional requirement. *See* ECF No. 72 at 6-7; ECF No. 73 at 6-7.

"When a plaintiff seeks to quiet title to a property or permanently enjoin foreclosure, the object of the litigation is the ownership of the property. Therefore, the value of the property or the amount of indebtedness on the property is a proper measure of the amount in controversy." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 776 (9th Cir. 2017). In *Corral*, the plaintiffs sought only a temporary injunction while the defendant considered their loan modification application, so the value of the property was *not* the amount in controversy because "even if [plaintiffs] were to succeed on [their] lawsuit, they would not be able to retain possession and ownership of their Property without paying off their debt." *Id.* The Ninth Circuit contrasted the facts in *Corral* to "cases in which plaintiffs seek to enjoin foreclosure indefinitely as part of an effort to quiet title to the property or rescind their loan agreements," where the value of the property or amount of indebtedness can constitute the amount in controversy. *Id*.

Even if Plaintiffs' damages claims are premised on Deutsche Bank's lack of authority to foreclose, Plaintiffs conceded at the hearing that they are not asking the Court to enjoin foreclosure indefinitely nor bringing a claim to quiet title. Instead Plaintiffs seek "the right to rescind the negotiations of the contract" and to declare the mortgage and note void under HRS § 480-12. Am. Compl. at 24.

While rescission may be possible under that section, "a plaintiff seeking affirmatively to void a mortgage transaction under Section 480-12 must be able to place the parties in as close a position as they held prior to the transaction." *Lynch v. Fed. Nat'l Mortg. Ass'n*, CIVIL NO. 16-00213 DKW-KSC, 2017 WL 3908663, at *11 (D. Haw. Sept. 6, 2017) (concluding plaintiff had not stated a claim to relief for rescission under HRS § 480 where plaintiff did not allege she had the ability to tender the loan proceeds back to the lender, as necessary to obtain rescission). The Amended Complaint fails to contain sufficient facts necessary to demonstrate Plaintiffs would be entitled to rescission because the Amended Complaint does not indicate Plaintiffs are able to return the loan proceeds to the lender. *See id.*; *cf. Dicion*, 718 F. App'x at 478 (affirming district court could not exercise diversity jurisdiction over a quiet title claim because plaintiff's claim was "not a true quiet title claim" that might otherwise justify using the value of the property as the amount in controversy where plaintiff failed to state all the elements of such a claim).[9]

---

[9] Further, Plaintiffs seek rescission as relief for their claim that the assignment in 2012 constituted an unfair and deceptive practice. Am. Compl. ¶ 42. But Plaintiffs fail to object (and so concede) that any such claim is untimely under HRS § 480-24(a)'s four-year statute of limitations. *See Amina*, 329 F. Supp. 3d at 1164 (holding that Unfair and Deceptive Trade Practices claim premised on forged assignment was time-barred because not brought within four years of assignment and no plausible allegations suggesting equitable tolling given plaintiff had constructive notice from recording and actual notice through prior lawsuit); *Au v. Republic State Mortg. Co.*, Civil No. 11-00251 JMS/KSC, 2013 WL 1339738, at

Instead, Plaintiffs' Amended Complaint appears similar to the complaint in *Corral* where, even if Plaintiffs were to succeed on their lawsuit, they would not be able to retain possession and ownership of their property without paying off their debt. Thus, the Court concludes that it lacks subject matter jurisdiction over Plaintiffs' state law claims, and declines to exercise supplemental jurisdiction over those claims given the early stage of these proceedings and the ongoing foreclosure proceedings related to Plaintiffs' state law claims that are pending in state court. *See* 28 U.S.C. § 1367(c). Plaintiffs' state law claims are thus **DISMISSED**.

//

//

//

//

//

//

//

//

//

//

---

*13 (D. Haw. Mar. 29, 2013); ECF No. 61-1 at 16. For this reason as well, any request for rescission cannot transform the amount of the loan into the amount in controversy.

# IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss. Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE**. Plaintiffs' state claims are **DISMISSED**.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, December 6, 2019.

Jill A. Otake
United States District Judge

CIVIL NO. 19-00083 JAO-KJM, *Igarashi v. Deutsche Bank National Trust Company et al.*, ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

28